IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| SEAN FIELDS, | 1:23-cv-00041-RAL |
| Plaintiff | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| vs. | |
| REV. ULLI KLEMM, et al., | OPINION ON DEFENDANT KLEMM'S MOTION FOR SUMMARY JUDGMENT |
| Defendants | RE: ECF NO. 56 |

## I. Introduction

Plaintiff Sean Fields, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") at its State Correctional Institution at Albion ("SCI-Albion"), commenced this pro se civil rights action against prison officials to challenge their denial of his request for a religious accommodation diet. *See* ECF No. 1, ¶ 10. Fields, a devout Muslim, sought an accommodation for his inability to consume non-halal meat by requesting the Nation of Islam ("N.O.I.") diet, one of at least two non-meat diets offered by the DOC. *Id.* Defendant Rev. Ulli Klemm ("Klemm"), the DOC's Religious Services Administrator, denied Fields' request on the ground that his demand for a diet free of non-halal meat did not require a religious accommodation because Fields had the option to choose the DOC's meat-free

"Alternative Protein Menu Option." Fields claims that Klemm's denial of the N.O.I. diet violated his rights under the First Amendment to the Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq., and the Equal Protection Clause of the Fourteenth Amendment.

Klemm has moved for summary judgment on Fields' claims. For the reasons discussed herein, the Court will grant Klemm's motion.[1]

II. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge to preside in this case.

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

III. Material Facts

A. Local Rule 56.C.1

Before summarizing the pertinent facts, the Court notes that Fields has failed to respond to the Defendant's concise statement of material facts in accordance with

the requirements of Local Rule 56.C.1. To facilitate the Court's ability to identify disputed and undisputed material facts, Local Rule 56 requires a party moving for summary judgment to file a concise statement of material facts setting forth in numbered paragraphs and with citation to proper evidentiary support each factual assertion that the movant contends is undisputed and material. *See* LCvR 56.C. Klemm complied with this requirement when he filed his motion for summary judgment. *See* ECF No. 57.

The rule, in turn, requires the party opposing the motion for summary judgment to file a responsive concise statement of material facts which (1) admits or denies the facts asserted in each numbered paragraph of the movant's concise statement; (2) sets forth with appropriate citation to the record the basis for any denial of asserted fact; and (3) states, in separately numbered paragraphs, any additional material facts upon which the party relies in opposing the motion. *See* LCvR 56.C.1. A party "faces severe consequences for not properly responding to a moving party's concise statement." *Hughes v. Allegheny County Airport Authority*, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017). All facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E.

Upon Klemm's filing of his motion for summary judgment, the Court issued an order directing Fields to respond. ECF No. 63. The Court's order included detailed

instructions regarding what Fields needed to do to properly respond to Klemm's concise statement and the consequences of failure to do so. *Id.* It also included copies of Local Rule 56 (ECF No. 63-1) and Federal Rule of Civil Procedure 56 (ECF No. 63-2). Fields moved for and was granted an extension of time to respond to Klemm's motion. *See* ECF Nos. 64, 65. Rather than file a response to Klemm's motion, however, Fields later filed a cross-motion for summary judgment (ECF No. 66) and a concise statement of material facts (ECF No. 68) that did not respond to the factual assertions of Klemm's concise statement or otherwise comply with LCvR 56.C.1.[2] Despite Fields' non-compliance, the Court will consider the assertions of fact in his submissions, to the extent they are supported by the record, in determining whether issues of material fact remain for trial. But any properly supported statement of fact in Klemm's concise statement will be deemed admitted under LCvR 56.E to the extent the Court cannot reasonably glean from Fields' submissions a record-supported response.

B. Record-Supported Facts

Pursuant to DOC Policy DC-ADM 819, an inmate seeking an accommodation in the form of a special religious diet must submit a Religious Diet Request Form to his or her Facility Chaplaincy Program Director (FCPD). ECF No. 57 ¶ 12. This form requires the inmate to state the name of his/her religion, the type of dietary

[2] Fields filed his cross-motion for summary judgment on November 10, 2025, two months after the Court ordered deadline for the filing of dispositive motions. *See* ECF No. 52 (extending the summary judgment deadline until September 19, 2025). Because this filing occurred well beyond the deadline, the Court will strike the cross-motion. But, to the extent the factual assertions in Fields' brief and concise statement are supported by the record, the Court will consider them in determining whether issues of material fact remain for trial.

accommodation he/she is seeking, the specific foods his/her religion prohibits or mandates, the steps the inmate has taken to follow his/her religious dietary laws in the absence of the requested accommodation, and a list of sacred text references or sources which support the religious reason(s) behind the requested accommodation. ECF No. 58-3 at p. 3. Within fifteen working days following receipt of the Religious Diet Request Form, the FCPD or a designated staff member must formally interview the inmate to clarify the inmate's request and evaluate the sincerity of the inmate's religious belief. DC-ADM 819(D)(2). The FCPD or staff member must then complete a Religious Diet Evaluation Form and circulate it to the Deputy Superintendent for Centralized Services ("DSCS") for approval or denial. DC-ADM 819(D)(8). The recommendation is then forwarded to the Bureau of Treatment Services ("BTS") for further evaluation. *Id.*

Within thirty days following receipt of the Religious Diet Request Form from BTS, the inmate's request must be reviewed by the BTS Religious Accommodation Review Committee ("RARC"). ECF No. 57 ¶ 13. Within fifteen days of the RARC meeting, BTS must decide whether to grant or deny the request and notify the inmate's institution. *Id.* ¶ 14. The inmate must be informed of the decision within ten working days thereafter. *Id.* ¶ 15.

On November 10, 2021, Fields submitted a Religious Diet Request Form in accordance with DC ADM 819(C), listing his religion as Islam and requesting the N.O.I. diet. ECF No. 58-3, p. 3. The N.O.I. diet is a non-meat diet offered by the DOC. The DOC also offers an Alternative Protein Source Entrée diet, which is meat-

free. ECF 58-1, ¶ 21. Under section C of the request form, which asks the inmate to "[e]xplain why your dietary needs cannot be met through Mainline or the Alternative Protein Source Entrée" diet, Fields wrote:

> The food from Mainline has a lot of health issues High sodium from processed food Meats and as a Muslim I have been command[ed] not to harm myself. Please see attached request slip to dietary

ECF No. 58-3, p. 3. As referenced in his Religious Diet Request Form, Fields attached an "Inmate Request" form that he had previously sent to the prison dietary department at SCI-Albion. *Id.* p. 4. In that form, he stated in pertinent part:

> This is my second request to you about this issue. A report on CNN aired on 10-26-15 from the World Health Org. stating that "PROCESSED MEAT(S) Hot dogs, Ham, Sausage etc. Leads to CANCER. This cancer is called Carcinogenic which is the second the highest cause of death in the U.S. with 34,000 deaths per year. The Department of Corrections only feeds inmates processed meats Hamburger patties, chicken patties, Veal patties, Hot Dogs, and Sausages. I address this issue to you because you should be aware of this issue, and what steps that are being taken to change this deadly risk from our diet.
>
> I hope that this time I can receive a response from you in an (sic) reasonable amount of time, so that I may forward your response on forward through the proper chain of command.
>
> Everyday, every meal puts me at more of a risk of developing this deadly disease, from a high processed diet.

*Id.*

On December 16, 2021, former SCI-Albion Facility Chaplaincy Program Director ("FCPD") Lucas Hafeli completed a Religious Diet Evaluation Form in which he recommended to the RARC that Fields' request be approved. ECF No. 58-1, ¶ 18. The RARC, however, rejected Hafeli's recommendation and denied Fields'

accommodation request based on a determination that Fields' request for a diet free of non-halal meat could be accommodated by the meat-free alternative protein source diet.[3] *Id.* ¶¶ 19-21. BTS informed Fields that his request had been denied in a memorandum authored by Klemm and sent to Fields on or about January 28, 2022. ECF No. 58-3.

In reaching its decision, the RARC identified several commissary purchases within the three months preceding Fields' request that were inconsistent with the foods he identified as prohibited by his religion. *Id.* ¶ 23. Commissary records showed that between August 10 and November 10, 2021, Fields purchased numerous non-halal meat items such as turkey summer sausage, buffalo style chicken bites, and shredded chicken breast, as well as other food items containing non-halal meat by-products, including provolone cheese stick, chicken flavor ramen noodles, and chicken gravy mix. *Id.* ¶ 25. Although Fields asserts that he purchased those items to barter with other inmates, such bartering is specifically prohibited by DC-ADM 815 (Personal Property, State Issued Items, and Commissary/Outside Purchases Procedures Manual), Section 2, Subsection A.5.(a)). *Id.* ¶ 27.

The RARC also reviewed Fields' medical records and found nothing to indicate that his blood pressure or the dosage of his blood pressure medication had increased due to the denial of his religious diet request. *See* ECF 58-6 [Declaration of Michael Edwards]; ECF No. 58-7 [Excerpt from Fields' Medical Records]. The committee also

[3] Due to budgetary constraints and the cost of the DOC's religious diets, inmates with religious diet restrictions that can be accommodated by the Alternative Protein diet are reminded of their ability to select that dietary alternative to the prison's Mainline menu. *Id.* ¶ 28.

found no evidence that Fields ever submitted a sick call during the relevant timeframe complaining of headaches or that he expressed concerns about headaches during his biannual chronic care visits. *Id.*

The instant lawsuit, filed on February 28, 2023, challenges that decision. ECF No. 1. Shortly after initiating this action, Fields filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking an order directing Klemm to place him on the religious accommodation diet list. ECF No. 11. The Court scheduled a hearing on that motion for February 1, 2024. ECF No. 28. Prior to the hearing, however, Klemm submitted a "Notice to the Court" explaining that, "as of January 27, 2024, Plaintiff [had] been placed on the NOI/MTI religious diet," as requested. ECF No. 29, ¶ 3. *See also* ECF No. 58-1, ¶ 28; ECF No. 58-5 [Fields' Religious Diet Memo of Understanding]. Based on this representation, the Court denied Fields' motion for injunctive relief as moot. ECF No. 30. Per DC-ADM 819, Fields will continue to receive the N.O.I. diet until he voluntarily relinquishes it, fails to notify staff of his desire to continue the diet upon his transfer to another institution, or fails to comply with the religious diet rules. *See* ECF No. 58-1, ¶ 29; ECF No. 58-2, DC-ADM 819 § 4(G)(1)-(3).

## IV. Discussion and Analysis

### A. Fields cannot recover money damages under the RLUIPA.

The freedom to exercise one's religion without interference "extends to all citizens of this nation, whether they are at liberty or behind bars." *Nunez v. Wolf*, 117 F.4th 137, 142-43 (3d Cir. 2024). To that end, the RLUIPA, 42 U.S.C. §§ 2000cc

et seq., provides "heightened protection to inmates to ensure that they are not denied religious freedoms without a compelling reason." *Id.* at 143. Whereas a prison regulation challenged on First Amendment grounds must only be "reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987), a restriction on religious exercise challenged under RLUIPA "is subject to strict scrutiny, requiring the government to prove that it 'is the least restrictive means of furthering [a] compelling government interest.'" *Nunez*, 117 F.4th at 146 (quoting 42 U.S.C. § 2000cc-1(a)(2)). To achieve the statute's legislative purpose, the RLUIPA authorizes injunctive and declarative relief against state officials in their official capacities, but it does not permit suits against officials in their individual capacities or the recovery of monetary damages. *See Landor v. La. Dep't of Corrs. & Public Safety*, 609 U.S. 59 (2026) (holding that the RLUIPA does not authorize individual-capacity claims or the recovery of damages against state actors); *Parkell v. Senato*, 704 Fed. Appx. 122, 125 (3d Cir. 2017) (per curiam) (citing *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012). Therefore, any claim for money damages against Klemm under the RLUIPA fails as a matter of law and must be dismissed.

B. Fields' claim for injunctive relief is moot.

On or about January 26, 2024, the DOC approved Fields for the N.O.I. diet, and it has provided the N.O.I. diet to Fields since that date. ECF No. 58-1, ¶ 28; ECF No. 58-5. Under DOC Policy DC-ADM 819, the diet cannot be withdrawn unless Fields voluntarily surrenders it, fails to notify his new prison of the diet upon transfer, or fails to comply with its rules. Because Fields has received the equitable

relief he requested and the denial of the N.O.I. diet is not reasonably likely to reoccur, Fields' claim for injunctive relief is moot.

A court may adjudicate only actual, ongoing cases, or controversies, and a justiciable case or controversy must exist at all stages of review. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). A case is moot and therefore nonjusticiable when the issues presented are no longer live or the parties lack a cognizable interest in the outcome. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Because Fields has already received all equitable relief potentially available to him under RLUIPA or § 1983, his claim for injunctive relief appears to fall within the essence of mootness.

The Supreme Court has recognized a "voluntary cessation" exception to the mootness doctrine under which a "defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Under this exception, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Employees Int'l Union*, 567 U.S. 298, 307 (2012). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000); *see also Reading v. N. Hanover Twp., New Jersey*, 124 F.4th 189, 198 (3d Cir. 2024) (holding that a defendant's voluntary cessation of challenged

conduct moots a case only if the defendant can show that "the [practice] cannot reasonably be expected to recur"). Klemm has met this burden in this case.

Fields has been receiving the N.O.I. diet since January 26, 2024. Under DC-ADM 819, the diet cannot be discontinued except under limited circumstances that are within Fields' control and beyond Klemm's authority. Federal courts have consistently found RLUIPA and First Amendment injunctive relief claims based on religious diet accommodations become moot when the plaintiff's requested diet is approved and a policy or other restriction prohibits the involuntary or arbitrary withdrawal of the diet.[4] Where such a policy or other safeguard exists, speculation

[4] *See e.g., Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (holding that claim for injunctive relief was moot where the plaintiff "currently receives a non-meat diet and there is no evidence that [the defendant] intends to revoke [his] religious diet"); *Monson v. Steward*, 2017 WL 2882709, at *6 (D. Or. July 6, 2017) (holding that claims for injunctive and declaratory relief under RLUIPA were moot where Oregon Department of Corrections had "provided Monson with the requested kosher diet and will continue to do so until Monson is either released from ODOC custody, requests to be removed from the diet, or violates the rules for inmates receiving kosher diets"); *El v. Evans*, 694 F. Supp. 2d 1009, 1012 (S.D. Ill. 2010) (holding that inmate's RLUIPA claim for injunctive relief was moot where "[h]e is receiving a vegan diet [as demanded] and offers nothing more than speculation that it may be revoked in the future"), *rev'd in part on other grounds, vacated in part sub nom. Vinning-El v. Evans*, 657 F.3d 591 (7th Cir. 2011); *Townsend v. Liebel*, 2025 WL 1529330, at *5 (S.D. Ind. May 29, 2025) (holding that RLUIPA claim for injunctive relief was moot where although "theoretically possible that the [prison] will reverse [its] decision and [a prison official] will revoke [Mr. Townsend's] [Kosher] diet on some other basis, that possibility is supported only by speculation and not evidence"); *Boyd v. Liebel*, 2022 WL 2079072, at *4 (S.D. Ind. June 9, 2022) (holding that claim for injunctive relief was moot where plaintiff "has been approved for and is receiving a kosher diet" he requested as a religious accommodation); *Carmichael v. M. Aguilar*, 2015 WL 1849868, at *1 (E.D. Cal. Apr. 22, 2015) (sustaining magistrate judge's finding of mootness of injunctive relief claim under RLUIPA where "Plaintiff began receiving a Halal diet in September 2013"); *Porter v. Wegman*, 2015 WL 2345630, at *10 (E.D. Cal. May 14, 2015) (holding that "[b]ecause injunctive relief is the sole form of relief available under RLUIPA, Plaintiff's subsequent receipt of the Kosher diet in October of 2014 moots his request for injunctive relief), *aff'd in part, rev'd in part on other grounds*, 671 Fed. Appx. 442 (9th Cir. 2016); *AlAmiin v. Morton*, 528 Fed. Appx. 838 (10th Cir. 2013) (holding that injunctive relief claim was moot where "the policy underlying the denial of [the plaintiff's] halal-meal requests has been amended, and thanks to the injunction entered in his favor against other defendants in this litigation, Mr. AlAmiin now has what he originally sought—[Correctional Facility] will provide him with halal meals that are prepared and served according to kosher standards"). *Compare Wiggins v. Hoisington*, 2015 WL 13665442, at *11 (D.N.M. Feb. 27, 2015) (holding that injunctive relief claim was not moot where conformity of diet to religious requirements remained at issue and, in any event, "Defendant Roark could take it away again tomorrow, because unlike the defendant in *AlAmiin*, he is not bound by an

or conjecture that a defendant might defy the policy or restriction and terminate the diet is not enough to overcome mootness. *See e.g., Townsend*, 2025 WL 1529330, at *5 (holding that RLUIPA claim for injunctive relief was moot where although it was "theoretically possible that the [prison] will reverse [its] decision and [a prison official] will revoke [Mr. Townsend's] [Kosher] diet on some other basis, that possibility is supported only by speculation and not evidence"). In this case, the restrictions imposed by DOC Policy DC-ADM 819 establish that any renewed denial of Fields' N.O.I. diet is speculative and not reasonably expected to reoccur. Accordingly, Fields' claim for injunctive relief under RLUIPA and § 1983 will be dismissed as moot.[5]

C. Klemm is entitled to judgment as a matter of law on Fields' First Amendment free-exercise claim.

Klemm denied Fields' request for the N.O.I. diet for two reasons. First, noting that Fields' request for the N.O.I. diet was based on his religion's prohibition of consumption of non-halal meat, Klemm determined that this prohibition did not require approval of Fields for the N.O.I. diet because the restriction could be accommodated by the less costly Alternative Protein diet. Second, Klemm determined that Fields' commissary purchases included numerous instances of his having purchased non-halal meat-containing foods. Regarding this second basis for

---

'injunction entered in [Plaintiff's] favor against other defendants'"), *report and recommendation adopted*, 2015 WL 13665424 (D.N.M. May 1, 2015).

[5] The same is true of Fields' request for declaratory relief. *See Monson*, 2017 WL 2882709, at *6 (holding that claims for injunctive and declaratory relief under RLUIPA were moot where Oregon Department of Corrections had "provided Monson with the requested kosher diet and will continue to do so until Monson is either released from ODOC custody, requests to be removed from the diet, or violates the rules for inmates receiving kosher diets").

denial, the record also reflects that Fields' request for the N.O.I. diet was based in material part on health rather than religious considerations. In responding to the direction to "[e]xplain why [his] dietary needs cannot be met through Mainline or the Alternative Protein Source Entrée" diet, Fields wrote:

> The food from Mainline has a lot of health issues High sodium from processed food Meats and as a Muslim I have been command[ed] not to harm myself. Please see attached request slip to dietary

*Id.*

In further response, Fields submitted an "Inmate Request" form that he had previously sent to the prison dietary department at SCI-Albion. In that form, he stated in pertinent part:

> This is my second request to you about this issue. A report on CNN aired on 10-26-15 from the World Health Org. stating that "PROCESSED MEAT(S) Hot dogs, Ham, Sausage etc. Leads to CANCER. This cancer is called Carcinogenic which is the second the highest cause of death in the U.S. with 34,000 deaths per year. The Department of Corrections only feeds inmates processed meats Hamburger patties, chicken patties, Veal patties, Hot Dogs, and Sausages. I address this issue to you because you should be aware of this issue, and what steps that are being taken to change this deadly risk from our diet.
>
> I hope that this time I can receive a response from you in an (sic) reasonable amount of time, so that I may forward your response on forward through the proper chain of command.
>
> Everyday, every meal puts me at more of a risk of developing this deadly disease, from a high processed diet.

ECF No. 58-3, p. 4.

The record establishes that the Alternative Protein diet does not include meat but still meets the nutritional requirements of inmates on that diet. Fields has not identified any food items on the Alternative Protein diet that violate his religious beliefs or requirements. Accordingly, the first issue raised by the facts of this case is whether a prison official violates an inmate's First Amendment right to the free exercise of his religion where he denies the inmate the religious diet of his choice but provides him with an alternative that complies with his religious beliefs. Case law leads the Court to answer this question in the negative.

To establish a violation of the Free Exercise Clause of the First Amendment, a prisoner plaintiff must first show that a prison practice or policy has substantially burdened the practice of the prisoner's religion. *See Robinson v. Superintendent Houtzdale SCI*, 693 Fed. Appx. 111, 115 (3d Cir. 2017). Once a substantial burden on religious exercise is shown, the burden shifts to the government to show that the policy or practice is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Garraway v. Lappin*, 490 Fed. Appx. 440, 445 (3d Cir. 2012). In this case, Fields' written request for the N.O.I. diet primarily focused on his preference for a diet healthier than the Mainline prison diet. Because the religious prohibition Fields identified – the commandment to "not harm himself" – could be accommodated by the Alternative Protein diet, the record does not support a plausible finding that Klemm's denial of the N.O.I. diet and offering of the Alternative Protein diet substantially burdened Fields' religious exercise. Indeed, the Third Circuit Court of Appeals has repeatedly found that providing only

vegetarian meals to accommodate halal-observant inmates comports with the First Amendment. *See Riley v. DeCarlo*, 532 Fed. Appx. 23, 27–29 (3d Cir. 2013) (concluding that the DOC's decision to not serve a halal meat diet did not violate the First Amendment or RLUIPA); *Adekoya v. Chertoff*, 431 Fed. Appx. 85, 88 (3d Cir. 2011) (Muslim inmate failed to state a First Amendment free exercise claim where "[a]lthough he repeatedly alleged that he did not receive halal meals while at the [prison], he did not allege that he was denied vegetarian meals or otherwise prevented from practicing his religion"); *Garraway v. Lappin*, 490 Fed. Appx. 440, 445 (3rd Cir. 2012) (holding that a Federal Bureau of Prisons policy that accommodated Muslim religious dietary restrictions with vegetarian diet and no halal meat did not violate the First Amendment). District courts in this Circuit have consistently reached the same decision. *See Abdul-Aziz v. Lanigan,* 2018 WL 1069420, at *8 (D.N.J. Feb. 26, 2018) (dismissing First Amendment claim by plaintiff who challenged halal accommodation only with vegetarian meals); *Stathum v. Nadrowski*, 2016 WL 7411428, at *1, *5 (D.N.J. Dec. 22, 2016) (same); *McCray v. Passaic Cty. Jail*, at *1, *3 (D.N.J. Nov. 27, 2013) (dismissing upon screening free exercise claim challenging vegetarian halal meals); *Rashid v. Lanigan*, 2018 WL 3630130, at *9 (D.N.J. July 31, 2018) (dismissing First Amendment claim and holding that providing "only vegetarian meals to accommodate Halal-observant inmates is constitutionally acceptable"); *Garraway v. Lappin*, 2012 WL 959422, *15 (M.D. Pa. March 21, 2012) (recognizing that "the majority of circuit and district courts that have looked at this specific issue have concluded there is no such clearly established right

to halal meals, with or without halal meat, under the First Amendment's Free Exercise of Religion Clause [or] RLUIPA").

The Court of Appeals first addressed this issue in *Williams v. Morton*, 343 F.3d 212 (3d Cir. 2003). In that case, Muslim inmates at the New Jersey State Prison sued prison officials under 42 U.S.C. § 1983, arguing that the prison violated their First Amendment free exercise rights and equal protection rights by refusing to serve halal meat (while providing a pork-free religious vegetarian diet instead). The prison regulation challenged by the plaintiffs provided as follows:

> An inmate who cannot eat the food served to the general population because of the inmate's religious beliefs may request a religious vegetarian diet. Upon review and approval of the request by the Chaplain of the correctional facility in accordance with this subchapter, nutritionally balanced vegetarian meals shall be provided to the inmate in place of the food served to the general population.

*Id.* at 215.

The plaintiffs contended that, "as applied, this regulation violate[d] their sincerely held religious belief that they are required to consume Halal meat in their diet."[6] *Id.* On appeal from a district court decision granting summary judgment in favor of the prison, the Court of Appeals for the Third Circuit analyzed the plaintiffs' First Amendment free-exercise claim under the following four-part standard enunciated by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987):

[6] The plaintiffs also claimed that the regulation violated their Fourteenth Amendment equal protection rights by providing Kosher meals with meat to Jewish prisoners without providing halal meat to Muslim inmates. *Id.* at 215-16.

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.... A second factor relevant in determining the reasonableness of a prison restriction ... is whether there are alternative means of exercising the right that remain open to prison inmates.... A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.... Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Id.* at 216-17 (quoting *Turner*, 482 U.S. at 89–90). The Court of Appeals noted that "the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." *Id.* at 217 (citing *Overton v. Bazzetta*, 539 U.S. 126 (2003) (applying *Turner* and upholding prison regulations limiting prisoner visitation rights)).

The Court of Appeals held that the prison officials' identified interests in simplified food service, prison security, and budgetary constraints were rationally related to providing a vegetarian diet rather than halal meats and, therefore, favored the prison officials on the first *Turner* factor. *Id.* Klemm relies on comparable interests in this case. Indeed, DC-819 specifically cites security and budgetary considerations in support of the religious accommodation policies implemented by Klemm:

> Within security and budgetary limitations and in light of available resources, the Department seeks to accommodate the sincerely held religious beliefs of every inmate. In accommodating religious beliefs, the Department will use the least restrictive means necessary, provided they do not interfere with security priorities and with the normal operation of each facility.

DC-ADM 819 (4)(A)(1); ECF No. 58-2 at 1. This factor favors Klemm in this case. *See Smith v. Kyler*, 295 Fed. Appx. 479, 481 (3d Cir. 2008) (recognizing that "the DOC has a legitimate interest in managing limited financial resources and in maintaining prison security").

As to the second *Turner* factor, the Court in *Williams* found that the plaintiffs had ample alternative ways to practice their faith, including the opportunity to pray five times daily, a weekly congregational prayer service, observance of religious holidays, and the chance to observe the five pillars of the Islam faith. *Id.* at 219. The Court emphasized that the availability of these alternative means to express an inmate's religious beliefs "tends to support the conclusion that the regulation – here providing a vegetarian meal rather than one with meat – is reasonable." *Id.* Because the same alternatives are available to Fields, this factor again favors Klemm in the instant action.

Regarding the third and fourth *Turner* factors – the impact of accommodating the plaintiffs' request that meals include halal meat and the absence of "ready alternatives" to the challenged prison regulation – the Court found that plaintiffs had failed to present evidence showing the feasibility of serving halal meat to the prison's many Muslim inmates. *Id.* The record in this case is similarly devoid of any support for the practicality of serving halal meat to the DOC's many Muslim inmates. Thus, each of the four *Turner* factors favors the validity of Klemm's action in this case.

Based on the record in this case and the consistent authority rejecting First Amendment claims challenging prison policies that accommodate Islamic dietary

restrictions by providing a vegetarian or alternative protein diet option rather than halal meat, the Court will grant Klemm's motion for summary judgment as to Fields' First Amendment free-exercise claim. No genuine issue of material fact remains as to this claim, and Klemm is entitled to judgment as a matter of law.

D. Even if the record supported a violation of Fields' First Amendment rights, Klemm would be entitled to qualified immunity based on the absence of clearly established law to support the right as properly framed by the facts of this case.

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity defense is traditionally analyzed in two prongs: (1) whether the facts support the violation of a constitutional or statutory right; and (2) whether the right at issue was "clearly established" at the time of the challenged conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The two prongs to the qualified immunity inquiry need not be analyzed in sequential order; courts have discretion to decide which of the two prongs to tackle first. *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For purposes of qualified immunity, "'[c]learly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *D.C. v. Wesby*, 583 U.S.

48, 63 (2018) (cleaned up) (citations omitted). "In other words, existing law must have placed the constitutionality of the [official's] conduct 'beyond debate.'" *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). A legal principle is clearly established only where it is "dictated by controlling authority or a robust consensus of cases of persuasive authority[.]" *Id.* (citations and internal quotation marks omitted)). This means that the right must be "derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted). "In determining whether a right is clearly established, [however,] it is not necessary that the exact set of factual circumstances has been considered previously." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 259–60 (3d Cir. 2010) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). But "the precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63 (citing *Reichle v. Howards*, 566 U.S. 658, 666 (2012)). "The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (citing *Saucier*, 533 U.S. at 202).

Importantly, the "clearly established" inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (emphasis supplied) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)) (internal quotation marks omitted). Therefore, in this case, the Court may not define the right in broad terms, such as "a

prisoner's right to the free exercise of his religion." Under the facts of this case, the right Fields asserts is the right to choose a religious diet that includes halal meat over an available alternative protein diet option that also accommodates his religious practice and restrictions. As discussed above, the Third Circuit has consistently found that providing only vegetarian meals to accommodate halal-observant inmates comports with the First Amendment. *See Riley*, 532 Fed. Appx. at 27–28; *Adekoya*, 431 Fed. Appx. at 88; *Williams*, 343 F.3d at 217–21. No contrary Supreme Court or Third Circuit authority or robust consensus of authority from the other Courts of Appeals supports the asserted right. Accordingly, Klemm is also entitled to judgment as a matter of law on Fields' First Amendment claim based on qualified immunity.

E. Klemm is entitled to judgment as a matter of law on Fields' equal protection claim.

Fields' Complaint in this action does not include a claim for violation of his Fourteenth Amendment right to equal protection. Although the Complaint mentions Fourteenth Amendment due process rights, it includes no reference to equal protection; nor does it allege facts to support that Fields was treated differently from any similarly situated inmate. During an earlier proceeding in this case, Fields briefly raised possible disparate treatment relative to other inmates and their religious diet accommodation requests, and the Court permitted him to conduct limited discovery on the issue despite the expiration of the discovery deadline. *See* ECF Nos. 33, 34. But Fields never sought leave to amend his Complaint to raise an equal protection claim or allege facts to support such a claim. Fields' brief in opposition to Klemm's motion for summary judgment assumes that an equal

protection claim is before the Court. It is not. On this basis alone, Klemm is entitled to judgment as a matter of law on any purported equal protection claim.

Furthermore, even if an equal protection claim were properly before the Court, it would fail based on the record. To support such a claim, Fields must "at the very least," demonstrate "that (1) the defendant treated [him] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "Persons are similarly situated under the Equal Protection Clause *when they are alike in all relevant aspects*." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir.2008) (emphasis added; quotation marks and citation omitted). And in the prison context, *Turner* applies with equal force to a prisoner's equal protection claim. *Williams*, 343 F.3d at 221. (citing *DeHart v. Horn*, 227 F.3d 47, 61 (3d Cir. 2000)).

Fields does not claim that the religious accommodation diets provided to inmates of other faiths included food items denied to Muslim inmates. Nor has he produced any evidence that Klemm denied religious diet requests submitted by Muslims with greater frequency than those of any other religious group. Instead, he appears to base his claim on the proposition that Klemm subjected his religious diet request to greater scrutiny than he applied to requests by inmates seeking a kosher diet. *See* ECF No. 67, p. 9. In support of this position, Fields has produced affidavits from four inmates who, without identifying a religion, state that they were approved for a kosher diet. *See* ECF No. 68-1; ECF No 83-1, pp. 8-12.

Inmate Keiff King attests that he has been on the kosher diet for more than four years and that he "applied and had been rejected for some reason and [he] reapplied and it was accepted at which point [he] was informed on how it works and what [he] can and cannot order." *Id.* p. 9. Although King states that his commissary orders have not been restricted since he was approved for his diet, he does not assert that officials did not review his commissary purchases when reviewing his request. *Id.* In fact, he acknowledges that, like Fields, his initial request for a religious diet was denied. *Id.*

Inmate Nathan Rosario attests that in 2012, approximately nine years before Fields submitted his request for the N.O.I. diet, he was approved for the kosher diet without any discussion of his commissary purchases. *Id.* p. 10. Rosario does not state that prison officials did not review his commissary purchases prior to approving his request, only that they did not discuss the subject. *Id.* He also does not state that he made commissary purchases inconsistent with his religious practice prior to prison officials' approving his request. *Id.*

Inmate Rashawn Farmer-Shaw attests that on an unspecified date, he applied for a kosher diet and was approved. He further states that he was interviewed prior to approval and that "it was never mentioned to me about any commissary although I did purchase chicken bites and soups etc." *Id.* p. 11. He does not indicate when he applied for a kosher diet or who was involved in the review of his request. *Id.* Nor does he explain when he purchased "chicken bites and soups etc.," the extent of those

purchases, or whether prison officials reviewed his commissary purchases in connection with his request for a kosher diet. *Id.*

Finally, inmate James Strapple attests that he has been on the kosher diet since July 11, 2019, and that he has "never had any difficulty ordering anything from commissary such as soups, cheese, ranch dressings, or certain meats such as beef or chicken." *Id.* p. 12. He further notes that "none of [those commissary purchases] prevented me from being approved for or receiving my diet." *Id.*

Nothing in the foregoing affidavits supports a plausible inference that the four proffered inmates were similarly situated to Fields or that Klemm treated Fields differently from any of them as the result of intentional discrimination. The affidavits provide insufficient information concerning the nature or grounds of any inmate's request to support a finding that he was "alike in all relevant aspects" to Fields. *Startzell*, 533 F.3d at 203. No affiant attests to Klemm's involvement in reviewing his request for a kosher diet. And even ignoring the absence of evidence to support such involvement, the affidavits do not to support a finding that Klemm intentionally subjected Fields' application to greater scrutiny based on his religion. In sum, the record in this case is insufficient to support any of the essential elements of an equal protection claim. The Court will therefore grant Klemm's motion for summary judgment as to this purported claim.

## V. Conclusion

For the foregoing reasons, the Court will grant Defendant Klemm's motion for

summary judgment [ECF No. 56] and direct that judgment be entered in favor of Klemm and against Plaintiff Sean Fields as to all claims. An appropriate order will follow.

Dated this 30th day of September, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE